221990, 221992, Kamel ChaneySnell v Andrew Young at all, arguing it is not to exceed 20 minutes for a claim, 20 minutes to be shared by defendants, Mr. Schaudy, Mr. Campbell, or appellants. Good morning. May it please the court, Todd Schaudy on behalf of defendant, appellant, Deputy Young. We're before the court on an appeal by Officer Tyko and Deputy Young, and those have been consolidated on a denial of qualified ability. You reserve rebuttal time, right? Yes, Your Honor, so we've agreed that I would have 12 minutes, or 20 minutes would be split with 12 minutes for me, 5 minutes for co-defendant, and then 3 minutes reserved for rebuttal time. Okay, great. Thank you. Sorry. Okay. We're before the court on three alleged incidents of excessive force. One is a pre-arrest, an alleged hand strike to the face, and then two are post-handcuffing, a claim of a kneeling, and a claim of a dragging. I would acknowledge that, and then there's also a failure to intervene claim as well. So it's very clear that both defendants have a right to appeal the issues on the post-handcuffing and the failure to intervene. The one issue I think is a closer call, so I'll spend my time addressing that, is whether or not I have the right to appeal the pre-arrest claim based upon the heck and the judicial estoppel arguments that I've raised. I've cited to the court four unpublished Sixth Circuit cases where two have said that the heck issue is inextricably intertwined and therefore is reviewable and two said it is not. Can we take a step back? Do you agree that the only way you could appeal the heck issue is through a pendant appellate jurisdiction and that the collateral order doctrine itself would not apply to heck claims? So the only reason you can appeal now is because under your view it's inextricably intertwined? Yes, Your Honor. Yes, I do. So this is only about pendant appellate jurisdiction?  I looked at, I grant you that there are four unpublished cases going both ways in our circuit, so I looked at the vast majority of other circuits and the vast majority of them treat heck as not kind of intertwined with the qualified immunity analysis. So why would you disagree with that? Yeah, so that's a good question and that's really the point I wanted to stress today is the way heck is being interpreted, certainly in the Sixth Circuit, is it can be interpreted in two different fashions. And the lower court, you'll see, interpreted it in the first way, which is that heck is an automatic bar. So if you look at Schreiber, which is Michigan law, and then you look at the Hayworth case, which was Ohio law, the court basically has said, okay, if excessive force is an affirmative offense or if lack of excessive force is an element to the crime, then an excessive force claim would be barred if there's a conviction for resisting arrest. And so they look at it as an automatic bar. The second way to look at this, which I think is important for my appeal, is that heck bars facts. And I argued it both ways below because if you look at the case law, it's kind of been interpreted both ways. And I cited the Tolliver case. And if you look at, for example, Judge White's jointed opinion about a year ago, I believe it is in the Savansky v. Arkfitch case. Judge White was in the majority and then Judge Sir Heinrich was in the minority and there was what I call a footnotes that kind of addressed this issue and kind of battled about this issue. What the courts are doing too often and what the lower court did in this case is they're applying this automatic bar test and they're not applying the factual issue test. So the way I think about heck, if we think about it in terms of res judicata principles, there's claim preclusion and there's issue preclusion. Right. Claim preclusion bars the claim. Issue preclusion bars some type of factual contention within the claim. And I would have viewed the fairest reading of heck to be about claim preclusion. You cannot bring this claim unless you get your state conviction overturned. But it seems to me it's an interesting argument, I'll grant you. But it seems to me you're transforming it into issue preclusion by saying the claim isn't barred, it's just this factual allegation within the claim. If we're going to stay true to heck, you have to apply it to a factual preclusion as well. Because if you look at Schreiber and Hayward, they both have the same quote in there. Heck bars a claim that seeks a determination of fact, of a fact, that if true would have precluded that conviction. So you really have to look at the facts on that factual basis. Why isn't that covered by your judicial estoppel argument? Heck would be the race judicata part. Judicial estoppel would be the issue preclusion. I argued it both ways. I think judicial estoppel would bar facts as well. And I cited a whole line of cases from other jurisdictions that have interpreted judicial estoppel that same way. But if you look at heck or judicial estoppel being immediately appealable, I wouldn't think that's... As I see it, it's really the same issue as heck. It's inextricably intertwined with the qualified immunity issue. If judicial estoppel is used to bar a claim, I take it if judicial estoppel is being used to just set what the state of the record is. In other words, if I say, here are the facts that I stated in a prior proceeding, and I'm estopped from denying those facts now. So I take those facts with the depositions, with the interrogatories, and that's my record. I'm not barring a claim with the estoppel principle. I'm just gathering the facts. That would be kind of like an issue as opposed to barring the claim.  But heck doesn't. It seems to me that heck doesn't allow for that. It would be some kind of estoppel doctrine, right? I argued it both ways, Judge. I argued judicial estoppel bars that as well as heck bars that. If you look at, to be true to heck, if there's an allegation of a fact that if true would render the conviction invalid, then it should be barred by heck. And that would require a factual analysis just like judicial estoppel would. You're estopped from raising a fact. Frankly, I think I win on either argument, judicial estoppel or heck, as to the factual issue. Remember what the claim is. I mean, the officers, he was charged with resisting and obstructing because he, when they came in on the drug raid, he was selling crack cocaine, he had the name Blade. He ran into the closet, according to the officers, and they said show me your hands and he wouldn't show his hands, so they tackled him in the closet and a struggle ensued. He pled guilty to that crime. And then when he was asked the factual basis, he... Counsel, we have to take the facts as alleged by the plaintiff unless there's some objective evidence otherwise. So that's not his version of the facts. Correct. And what he pled guilty to is not running into a closet and doing whatever you're saying. He pled guilty to not raising his hands when directed to do so. Correct. Yes, he pled guilty to not raising his hands, showing his hands when... It was actually showing his hands when he was given a lawful command to do so. And then his version at the deposition is he never failed to show his hands. His claim is they came in, he stood up right in front of them, they said show me your hands... He says raise your hands. He raised his hands, his hands were visible, the officer punched him. He then covered his face with the hands, hands always visible, and then the officer said raise your hands. He didn't do it until the second occasion. Then he raised his hands and he got punched a second time. So his version, if true, would render his conviction invalid because he never failed to show his hands. And at no point in time did he commit the crime for which he pled guilty. What would you... So I know you... So this is turning to the merits a little bit. I know you suggest that the state Michigan Supreme Court's decision in Moreno overruled Schreiber, but we have two post-Moreno decisions still following Schreiber. So why shouldn't we think that those are still controlling? Because the whole basis... Right now there's no basis to distinguish Schreiber from Hayward given the Supreme Court, the whole basis of Schreiber was based upon decisions that occurred before the Michigan Supreme Court issued the decision in people of Moreno. And then we, as I see it, to continue to apply Schreiber to this type of situation on an automatic preclusion-type claim, what you'd call claim preclusion, is directly contrary to the Michigan Supreme Court decision. We seem to still have applied it. I recognize the decisions didn't even cite Moreno. Would you just suggest that because they're unpublished we can just disavow them? Yes. Do you have a basis to distinguish them or do you just think they're wrong? Well, I think it really gets to the heart of the matter because the issue is, and it goes back to your original question, this automatic preclusion-type theory that the lower court applied, when you deal with HECT and you're dealing with broad statutes like the Michigan statute, you really have to do a particularized examination like Judge White, the opinion Judge White joined in and Savansky did. You've got to look at, okay, what was the specific conviction for? And then compare that to what the claims are in the excessive force. If the claims raised in the excessive force claim would undermine that conviction, they can't be used. They can't be used. Then you've got a HECT issue. And so I think if you do the particularized inquiry, as the case law suggests, then HECT does bar that claim as well as judicial estoppel. Can I ask you a question about the estoppel? Are there facts that are inconsistent in the depo versus what he pled to? Yes. Yeah, it's directly contrary. I'm not sure it is. In terms of where his hands were, is that? Yeah, the whole basis of the conviction of the crime was he failed to show his hands when given a lawful command to do so. His death testimony is his hands were always visible. In fact, his lawsuit claim. But I thought he said that he put his hands down to cover his face. So you're saying that would have been lawful resisting of arrest and he wouldn't have pled to it?  Two things, Judge. It would be lawful resisting arrest because he put his hands. That's not a crime to cover your face after you've been punched. And then at the same time, his hands are always visible. So the factual admission is gone in the lawsuit. Can I just clarify real quick?  So claim or excuse me, heck, would be just based on the mere fact of conviction. And judicial estoppel, is your argument here also based on the mere fact of conviction or is the judicial estoppel argument based on what he actually specifically said at the plea hearing in state court? Yeah, I based it on a factual basis. I argued it both ways, but I argued from a factual standpoint. He was barred from making that claim by judicial estoppel and by heck. Okay, thank you, Counsel. All right, thank you, Your Honor. Good morning, Your Honors. Kevin Campbell on behalf of the appellee, Officer Tykow. Given the time constraints that I have and at the risk of being redundant, provided the court permits, I'd like to just simply focus on where Officer Tykow's argument differs from Deputy Young's. And it differs with respect to the first two segments of alleged excessive force. And, of course, it differs because we're accepting the plaintiff's allegations as true as we must for this appeal. Importantly, the plaintiff admits that the punches in the first segment were rapid and unanticipated. The plaintiff testified that he could not see the first punch coming. It happened so fast. The plaintiff testified that the second punch, with respect to the second punch, he had no idea that the officer was going to strike him. Between the two punches, the plaintiff testified that there was just enough time for two commands to be made to raise his hands. And that after the second command, the punch came immediately. So under these facts, I'd respectfully submit that Officer Tykow did not have the opportunity or the means to intervene and stop the alleged force. And I think that this is consistent with a long line of cases in this circuit, where this court has held that when the alleged uses of force are passing, sudden, non-protracted, they last for a matter of seconds, then an officer nearby has no duty to intervene. Can I ask you about the knee? Of course. Is it your position that it was Officer Young that had to be the one that put the knee in the back or whatever? The plaintiff says he's not sure who it is. Your client testified it was Young, and Young testified that he at least had a knee in his back, I suppose, right? That is precisely right. Okay, so is that undisputed? I mean, if that were undisputed, then your client would be on the hook for failure to intervene on that segment of it. Is that right? Correct, Your Honor. And with respect to the duty to intervene with respect to the second segment, I'd respectfully submit that for the same reasons Officer Tykow had no duty to intervene in the first segment, he had no duty to intervene in the second segment, because this was a passing incident. The testimony is very clear that... Well, according to the plaintiff, he was on him for a while, enough that he had trouble breathing and needed an inhaler after. I mean, it seems to be enough time to, you're in a small room, to tell your partner to knock it off. As I understand the testimony, Your Honor, and I agree that the plaintiff testified that Officer, what we know as Officer Young, was on his back, had fallen on him for a period of time. However, there's no testimony that the knee was placed in his back for the entirety of that time. As I understand the record, the placement of the knee in his back was a very short segment of that, or sub-segment of that incident. And I'd also point out that there's no evidence that Officer Tykow observed this. He was simply in the room at the time. The precedent of this court is very clear that merely placing the officer at the scene does not necessarily give rise to a responsibility to intervene. Can I ask you about the dragging? Yes. Do we... I take it we don't have similar undisputed evidence about who did it? Correct. So both... So you're both possibly on the hook for the act, assuming we're taking all the facts in the plaintiff's favor, or both the other one then would be on the hook for the failure to intervene. Is that right? Correct. Okay. The argument, if I may, briefly, is that the pulling incident occurred within the confines of a room that was 10 feet by 10 feet. The plaintiff alleges that he was pulled from a queen-size bed within that room toward the wall and placed on the wall where he was fully searched. Nothing suggests that there was anything gratuitous in the officer's actions. And as I understand the precedent of this court, and I readily admit that... Well, he was subdued at that point, right? Correct. Yeah, I thought your argument was it may well have been gratuitous, but it was de minimis. Well, just to clarify, is that it was not gratuitous and that it was not done in... There's nothing to suggest that this was done to dehumanize, to hurt, to humiliate this... So you would... Because I had taken the brief to be arguing that there is just a de minimis exception to the Fourth Amendment. Yes, certainly. It would never qualify as the unreasonable use of force, even if it was gratuitous. So if the police had a policy of, when we arrest somebody, we're going to drag them 10 feet, every person, even if they give up and acquiesce to the arrest, we could drag them 10 feet and it wouldn't be a Fourth Amendment violation because it would just be de minimis. So that's not your position. Well, just to clarify, and I certainly realize I'm on thin ice with this argument with respect to the third segment, but the argument is, I think the argument that I emphasized in the brief was that it was a de minimis use of force, and I readily admit that in Morrison this court held very clearly that we don't have a de minimis threshold in the Sixth Circuit. However, there's nothing in the record to suggest that this was done gratuitously, and as I understand it, that's the key for determining whether it's de minimis or not. As I understand Morrison, the nature of the injury here was a rug burn. That was, what I would respectfully say, quite insignificant. That's not controlling. It's part of the analysis, and I think part of the analysis is whether or not there's evidence suggesting that the officer acted in a way to demean, to humiliate, to needlessly inflict force. Here, the object was to place this gentleman on a wall where he could be searched. Okay. Unless there's any additional questions, I think that covers everything. Thank you, counsel. Okay, thank you. We'll hear from plaintiff. Good morning, Your Honor. Sean Cabot on behalf of the appellee. If the court doesn't mind, I'll start with Defendant Teichau since he was kind of the last up. I think the most important thing, kind of starting with the last segments and working backwards, it's important to remember that at the time that the force was used, the dragging, the kneeing on the back, and plaintiff was very clear that it was not just a knee that was placed in his back to keep him down because there's no evidence that when they put the knee on him that he was trying to move, that he was trying to escape, or that he was in any way resisting. But he plainly testified that it was with all their weight on his back. The key to the analysis of those last two segments are the fact that he's handcuffed. He was already handcuffed behind his back. And in our brief, we say the case, I think, goes back to like 1991, that the Sixth Circuit has said that when an individual is subdued, basically handcuffed, that any force used on them is gratuitous and it's excessive, especially under the Fourth Amendment. You know, there's not been any testimony that he was trying to evade arrest, that he was kicking. In fact, one or both of the defendants during deposition testified that Mr. Snell never tried to kick them, they never tried to hit them, headbutt them, things that normally we kind of see in these types of cases that they use as an argument, well, you know, even though he's handcuffed, he was doing X, Y, and Z, which gives us the ability to use force. That's absent in this case. So any force that's used after he's handcuffed is clearly, clearly excessive, because there's no reason for it. One of the things I know, it seemed to be... Can I ask you about that? So we have the knee and we have the dragging. Let's assume you're right that somebody's on the hook for the kind of underlying act. What about the failure to intervene? And I'm having trouble seeing it on the dragging, the way the record seems, maybe on the knee, but I'm also a little skeptical. So on the failure to intervene claim, of course, on that you have to... The two elements are you have to be in a position to see all those things, number one, and then number two, you have to have the means and the opportunity to take care of it or to intervene. And I think what is critical in this incident, first of all, critically at all, is that there's just kind of two opposite ends to the factual spectrum in this case. You know, you have the plaintiff's version that it happened in the bedroom proper, and then you have the officer's which says it happens in the closet. Whichever place it happens, of course, we have to go by what the law says, we're the plaintiff's version, but the bedroom's very small. I think the deposition testimony was 8 by 10, something like that, so it's a small bedroom. In the closet, I want to think the deposition testimony was like it was 6 by 8. So anyway, you look at it, very, very small rooms where the only officers in there, and very clear in the record, the only two officers in there during any of this arrest, or this force, was Tycow and the other officer. Doesn't the smallness of the room suggest the dragging would have happened very quickly? I suppose you're making that point to suggest that the other officer would have seen it, but it would have ended just almost as soon as he saw it. So it seems to me that we have plenty of case law that suggests that if an incident lasts for less than 10 seconds, it's not enough time to intervene, and I'm curious why this wouldn't fall within that precedent. Well, I think how this case kind of steps outside those cases is the fact, so you do have the smallness, so you certainly meet the means and opportunity to intervene. Talking about the length, though, I think you have to consider, not to go back to the gram language, the totality of the circumstances, but I think you certainly have to go back from the time that the officers engaged Mr. Snell to the time that this happens, so we already had two incidents of him being punched twice, and then we have an incident where he's on the ground, we have the incident where he's clearly kneed in the back with, as he testified, full weight of the officer, and then you have the dragging, so you have multiple opportunities for the officer to say, look, knock it off, or literally in the smallness in the confines of the area to pull the other officer off, that doesn't happen. The point is that also lends to the fact that if there's been these multiple uses of force, you can anticipate or believe or presume that there might be more force, especially when one officer begins to grab his ankles. Why would an officer... But that would be true if Young was definitely... Young is the one that punches him, so then Tycow would be the one that would be on notice that, oh, Officer Young is doing something that he shouldn't be doing, so that might be... I mean, I guess, what's your position on the knee? Is it definitely Officer Young, or are you saying it's still disputed? It's still disputed. There's a case, Lon, I had it at the council table there. Basically, it was a case, I think it was McDougall, I think was the plaintiff's name, basically talks about those cases where he said in the finger-pointing game... Well, I don't see the dispute. Your client says he doesn't know who did it, right? And those two are saying it was Young, so there's no dispute, right? That's not a disputed issue. I wouldn't go that far, because Young testified that he delivered knee strikes. What? Young testified that he delivered knee strikes to the plaintiff. Now, what's critically important is that a lot of times, you find plaintiffs that say, yep, he did everything to me. In this case, you have a plaintiff who says, well, yes, there's this allegation that they said they used force, but no, they didn't knee strike me, and I think Young said it was two or three times. He denies that he was ever struck with the knee. He testifies that the full weight of the officer was placed on him. So while Young does say he struck him, Young, nor Tycow, admits that they were the ones who put their full body weight on his back while he's handcuffed. And I think that's critical, because, you know, like I said, the plaintiff's testimony was that he was not struck with the knee two or three times, that the officer placed his full body weight on there. They both deny that. So it becomes a question of fact, and again, the law is very clear that he's handcuffed. You can't do that. But if anybody did anything with a knee, it was Young? I mean, is there any evidence that Tycow's knee was involved in the incident? I believe Tycow said that he was kneeling next to him and helping to handcuff him. So yes, that puts him in the place. It puts him in the vicinity, and it certainly puts him in the place of opportunity and ability to do that. But they both deny that they put their body weight on him. The plaintiff clearly testified that that did occur. What's your view of what constitutional provision of failure to intervene violates? So we have case law that says it's a violation of 1983 if you fail to intervene with another officer's use of force. And I'm struggling. I'm just curious. I mean, it's binding precedent, so we follow it. But what provision of the Constitution does failure to intervene? Is it a substantive due process violation? I think it goes under the Fourth Amendment, the whole reasonableness. By definition, it's not a seizure. So Young engaged in the seizure, so I grant you that. But a failure to intervene? Well, I guess my position would be the failure to intervene is allowing or permitting a continuation of an unlawful seizure to occur when you could have stopped it. Like an aiding and abetting of some sort? Well, yeah, I guess in the sense of you're not having hands on, right? Sometimes when you think of aiding and abetting, we're thinking, well, I gave the knife to my friend and he stabbed, so I'm an aider and abetter. I mean, in this case, we don't have an action of aiding and abetting, but it's an inaction of allowing that unconstitutional behavior to occur. Do you think there should be an intent? Usually with aiding and abetting, you need to intend to accomplish whatever you are aiding and abetting. So perhaps TCAL should have to, you should have to show that TCAL had the intent to permit this force to occur rather than just, I assume the law is just negligently failing to stop it? I mean, I wouldn't agree with an intent aspect of it, because once we kind of go down that road, then we're saying that you have to have the intent to have a Fourth Amendment violation, which we don't have to have. So I think that... Perhaps you should have to have it when it's not you engaged in the Fourth Amendment violation. There's no respondeat superior liability under 1983. You only hold officers liable for their own actions. So we somehow have to equate some other officer's actions to hold this second officer liable. But I guess my position would be, Your Honor, is that, and this is going to sound rhetorical, so I apologize before I say it, but his action is that of inaction, right? He's making a decision to not act despite seeing the unlawful behavior and despite being in a position and having the opportunity and means to stop it, and he doesn't. So are you also making the claim that he should have intervened in between the first and second punches? Or is it just by the time the kneeing and dragging happened? So I'm also proposing that the failure to intervene regarding first and second punches. And the reason for that is, I know they characterize the first and second punch as rapid succession. We think of, I guess, almost like a boxing match, boom, boom, type thing. When you look at the testimony of plaintiff, and we cited it in our brief, and Mr. Schouty did a great rendition of it a little bit ago, so I hate to take the limelight off of his acting ability, but he testifies that the officers come in, he's standing at his bed, they tell him to put his hands in the air, his hands are in the air, they hit him once. Okay, punch number one. Then he says, he brings them down, he's covering his face to protect himself, and then he goes on to say that the officers tell him two or three more times, put your hands up, let me see your hands. Then he says when he does that, he gets punched a second time. So you already know, I mean, Taika already had the ability to see, and presumably did see the first punch, which was no reason for it. Again, not resisting, et cetera, et cetera. And so now you have the plaintiff bringing his hands down to cover his face, and you have the officers saying, you know, let me see your hands, put your hands up. Those are going to take seconds. We don't know if it's 10 seconds, 12 seconds, but we do know you already had one unlawful use of force, and now you have them covering your face, and the officer's saying put your hands up, let me see your hands, and he does it in the second punch. I believe there should have been an anticipation of that, and there's a case we cited in our brief, I think it was the, I forget the name of it, but it was basically the gentleman who was in the house of his father who had a medical condition, and the police came, and he basically said to the officer, I'm not leaving, you can tase me. And the officer tased him. Well, the other officer that was there, you know, the Sixth Circuit said, well, you know, we're going to affirm that denial of qualified immunity because you could have stopped it. I think it's the same situation here. There was certainly after the tasing occurred over 21 seconds. I mean, if you're standing there and tasing somebody, and you keep, I mean, 21 seconds is a long time. A punch happens in a second. So it doesn't strike me as all that analogous to this. Yeah, I don't think it's the same case. If I can quick look at it. It was the Kent versus Oakland County case. The deputy pulled out the taser. So he's shown the taser. The plaintiff says, go ahead and tase me. He does that. The other deputy that was there, the Sixth Circuit denied qualified immunity. Under the deposition version of the facts, he was guilty of resisting arrest? I mean, is it inconsistent with his plea of guilty? So, I don't think it's inconsistent. The thing, and we're kind of now going into the heck issue, I think what's critical here is, number one, we're not making a false arrest claim. So we're not undermining the validity of the state district court's determination or that plea. If we were making a false arrest argument and saying, you know, they violated the Fourth Amendment, false arrest, that maybe would be the argument. We're not making that argument here. The other thing that we have to remember is the plea was not to resisting and obstructing. It was to attempted resisting and obstructing. Which I think is critical. I think that's a distinguishing factor. But even if it wasn't, we're not, the two testimony is not inconsistent. I think... Why isn't just the mere fact of the conviction inconsistent after Moreno? So, I recognize we have these two cases that don't mention Moreno, the Michigan Supreme Court decision. But the Michigan Supreme Court decision has authoritatively interpreted the statute under which your client was convicted to require a lawful arrest, which means an arrest without excessive force, without unconstitutional force. So an admission that I violated, I resisted arrest, is an admission that the officers didn't use excessive force. It wasn't before Moreno, because of Ventura, which said you could actually resist arrest even if the officers act unlawfully. But Moreno overruled the case on which we relied and now said, no, if officers act unlawfully, then you don't violate the statute. Whatever that statute is. Well, I think what's critical here is the language of the statute, 750.8. What's critical is the Michigan Supreme Court decision that interpreted the language of the statute. What did your client admit to? He pled guilty to attempted resisting and obstructing. Okay, which includes not following the direction, right? The statute is so broad that it could include that. So the statute has written, if we were in Michigan, for example, and I stepped out of the courthouse today and I'm just walking with my briefcase down the road and the officer said, I want to see your identification. And I say, nah, I don't think so. And kept walking. In theory, that's disobeying a lawful command. And so if I plead guilty to that. If the request to see the ID was itself unlawful, you would not violate the statute under the Michigan Supreme Court's interpretation. Because the officer arresting you or requiring you to come with the officer to show your ID, that action itself has to be lawful. That's the way the Michigan Supreme Court interpreted and I guess the question that Shriver, the case on which you rely, relies on a Michigan Court of Appeals decision that was expressly overruled by Moreno. Well, we also have the Rumenap case, which was a 2018 case. And it held that, you know, that Heck didn't bar an excessive force case and it's already been mentioned today. So Rumenap was 2018. We have Savinsky, which was 2022, which holds for the same proposition. Neither of them discussed this issue. They were drive-by rulings. Well, I don't think they undermine Moreno. I think, you know, we have numerous cases. In fact, the district court opinion cited a number of Eastern District, and I realize they're not binding on this court, but cited, you know, cited a number of Eastern District Michigan that still follow Shriver and Rumenap. So Shriver itself says when the lack of excessive force is an element of the state conviction, Heck applies. And the only reason it didn't apply in that case was because the lack of excessive force was not an element. But that was based on Ventura. Moreno has now essentially said it's an element. Again, I think, you know, it goes back to you have to look at Moreno, you have to look at the cases following that even on this circuit in the context of the facts. And if we're, you know, in this case, you know, if we're going to say, well, okay, he gave a lawful command to let me see your hands or put your hands down, and he doesn't, and now all of a sudden that means we can use excessive force by punching him twice, I mean, where does that leave us? I mean, that leaves us in a horrible situation because simply the fact I'm covering my face because I've only been punched once unnecessarily, and I cover it and the officer says, okay, you put your hands up, and I'm scared to death because I'm afraid I'm going to get hit again. And I keep them there, and I do it, and then he punches me again. Now that's okay? It gives It wouldn't be that it's okay. It's the exact opposite. It would be that you didn't violate the state statute, so you shouldn't have pled guilty. Well, again, and I think Judge Edmonds, you know, addresses that, and she says that it wasn't, the language was it wasn't, basically it wasn't at opposite ends of the truth spectrum. I'm paraphrasing what she said. But I also think it's critical that that is not a dispositive issue at this point of summary judgment because even going back to Schreber, but even disregarding that in any other number of cases, that's an issue of credibility. It's an issue of avoiding the evidence. Do we believe them? Do we not believe them? So that goes to a jury question of determining credibility and truthfulness. And I see my time is up. Thank you, Your Honors. Thank you, Counsel. Roberto? Thank you. Just a couple quick points. I know I have a very short period of time, but I did not address the de minimis issue as to the post-handcuffing incidents, the kneeling of the weight, which if you look at the deposition testimony, it was actually, he was asked several times to identify how long it occurred, and basically he adamantly told us he doesn't know how long. He just knows he felt the full weight of the officer on him. So what you're talking about is a claim that could be as little as one second, and then the dragging, as you pointed out, we're in a 10 by 8 room, there's a bed, a queen size bed on the floor that takes up about half the room, and he testified he was dragged from his bed, and this is a 6 foot gentleman, from the bed by his feet to the doorway. That distance itself is a very short distance by necessity, and so you're talking about a dragging that at most, if we apply basic math principles, would have been 2 to 3 feet. Okay, so maybe that suggests that failure to intervene doesn't work for either of those. But he's handcuffed, right? It's still possible that whoever did the action could be liable, not for failure to intervene, but for doing it. That's the part I disagree with, Your Honor. I believe that that use of force falls within the de minimis standard. What case does that come from? Well, we cited two cases, Your Honor. We cited the 8th Amendment case and the other... They were both 4th Amendment cases we cited. And then we also cited to the 8th Circuit case as well that was cited with approval by the 6th Circuit in one of the cases I cited. So yeah, there has to be a de minimis standard. The Supreme Court said there's a de minimis standard. So you just think that the dragging, as long as it's 3 feet, the police can drag anybody? Yeah, so a very short period. They can't just drag anyone. So then there is no de minimis exception. The way I would interpret Graham is to say, when Graham has the sentence about not every push and shove, it means that judges shouldn't retroactively assess police conduct really strictly, and we should give them room to think that the force was needed to control the situation. But when you admit that it was gratuitous, and you're just saying it's de minimis, I think that's a misinterpretation of Graham. I just do not see... If we think that the evidence would suggest that the force was gratuitous, I don't see any type of de minimis exception for the force. Yeah, so I cited to the Leary case, which was a 6th Circuit case. That was a process 8th Amendment case. It was a 14th Amendment case. Based on the 8th. Yeah, and then I cited the Hanson case as well, and then I also cited the Nolan case. I'm sorry, I said 8th Circuit. It was 11th Circuit. If you think about it, we're dealing with a qualified immunity defense. So even if you think that a dragging is more than de minimis, the case law that's been cited, including on the kneeling case, I mean the kneeling case, the cases that they cited, the guy died. In almost every single case they cited. You're talking about a kneeling that could have been just a brief one second. And then in the dragging case, you're talking about two to three feet. So if you apply a rule that says any time there's any use of force whatsoever post-handcuffing, could you imagine how that would play out with an officer? So you get a guy, he's on the ground, you lift him up, you're using force, you guide him to the car. Of course it wouldn't be gratuitous though. The key point is not whether it's de minimis. The key point is whether the officer thought it was necessary. And of course it's necessary to lift an individual up to move him to the squad car. So that would be no problem. But the reason why it would be no problem is not because it's a de minimis use of the force. It's because it was for a legitimate action. You look at the way this claim is described. They're in a small room, he's handcuffed, and then weight is placed on him. But like his claim, it would be speculation to say it was anything more than a brief second. Thank you counsel, your time is up. Thank you both for your arguments and briefs. The case will be submitted.